427 F.2d 1352
 Nancy Anne SPANGLER et al., Appellees-Plaintiffs, and United
States of America, Appellee-Plaintiff in Intervention,
v.
PASADENA CITY BOARD OF EDUCATION et al.,
Appellees-Defendants, StanleyAlexander et al.,
Appellants-Applicants in Intervention.
 No. 25611.
 United States Court of Appeals, Ninth Circuit.
 June 15, 1970, As Amended June 25, 1970.
 
 Lee G. Paul (argued), of Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for appellant.
 Brian K. Landsberg (argued), Bernard H. Shapiro, Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., Dept. of Justice, Washington, D.C., James Stotter, II, Asst. U.S. Atty., Wm. Matthew Byrne, Jr., U.S. Atty., Los Angeles, Cal., for appellee.
 John P. Pollock (argued), of Pollock, Palmer & Metzler, Los Angeles, Cal., for Pasadena City Board of Education and others.
 Albert C. Lum, Of Boyko & Simmons, Los Angeles, Cal., for Nancy Spangler.
 Before HAMLEY, MERRILL and WRIGHT, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 This appeal is taken by appellants Alexander, et al., from an order of the District Court denying them leave to intervene in a suit brought by Spangler, et al., against the Pasadena Board of Education. The plaintiffs below are school children. Their suit is a class action brought to compel integration of the Pasadena schools, in which the United States has intervened on their behalf. (See Spangler v. United States, 415 F.2d 1242 (9th Cir. 1969).)
 
 
 2
 In the court below the suit was defended by the Board of Education and a full trial on the merits resulted. Judgment was for the plaintiff children. The court found the existence of discriminatory practices and ordered that they cease. The board was directed to submit a plan to correct the effects of past discrimination.[1] The board, following hearings, voted to comply with the decree and not to appeal and has since submitted a plan for the 1970-71 school year.
 
 
 3
 The appellants, parents of other Pasadena school children, are dissatisfied with the court decree and the decision of the board. They seek to intervene so that they may press appeal from the District Court order.
 
 
 4
 Rule 24 Fed.R.Civ.P. provides for intervention.[2] It is clear that in absence of a right to intervene under Rule 24(a) the refusal of the District Court to permit intervention under Rule 24(b) was not an abuse of discretion. Thus the question here presented is whether, under 24(a)(2) appellants had a right to intervene which the District Court, under the rule, was required to respect.
 
 
 5
 The same question (under distinguishing circumstances to be later discussed) arose in Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175 (1969). The District Court there had held that the method of operating schools used by the Board of Education in the District of Columbia unconstitutionally deprived Negro and poor children of their right to equal educational opportunities. A decree was entered which quite specifically spelled out the required remedy. Hobson v. Hansen, 269 F.Supp. 401 (D.D.C.1967). The board decided not to appeal and parents of school children, disagreeing with the court's holding and decree, sought intervention in order to press an appeal. The District Court held that the intervenors failed to satisfy the requirements of Rule 24(a) but granted the motions so that the Court of Appeals would have the opportunity to rule on the issues involved. Hobson v. Hansen, 44 F.R.D. 18, 33 (D.D.C.1968).
 
 
 6
 The Court of Appeals, sitting in banc, carefully considered the three requirements for intervention of right under Rule 24(a)(2). A majority concluded that parents of school children did have a sufficient interest in certain aspects of the action to meet the requirements of the rule; that they were so situated that disposition of the action might, as a practical matter, impair or impede their ability to protect that interest; and that their interest, under the circumstances, was not adequately represented by the Board of Education. Intervention was allowed.
 
 
 7
 The protectable interest of the parents was, however, recognized to be a narrow one. It was not their interest in opposing a plan of integration as such. Rather their interest was in freeing the board from judicial restraint so that the board could exercise its discretion to the fullest degree constitutionally permissible in deciding educational policies.
 
 
 8
 'Their interest extends only to those parts of the order which can fairly be said to impose restraint upon the Board of Education.' 408 F.2d at page 182.
 
 
 9
 Such is the limited interest of appellants in the case before us. Our case, however, differs greatly from Smuck in the extent of the protectable interest of appellants and the circumstances bearing upon the adequacy of the manner in which the Board of Education has represented appellants in the protection of that interest. Consequently, while following the general rationale of Smuck we reach a different result.
 
 
 10
 In Smuck the Board of Education was a 'lame duck' appointed board, soon to be superseded by an elected board. Such restraints as were imposed by court decree would be felt not by the litigant board but by its successor. Restraints imposed were far more oppressive than those in the decree before us. The lack of adequate representation of appellants' interest by the board was in 'the decision not to appeal,' (408 F.2d at page 182), made by this appointed board-- a decision that would be felt by the elected representatives of the residents of the school district constituting the new board. Significantly, the new board did not oppose the intervention.
 
 
 11
 In the case before us the decision not to appeal was in effect a decision to acquiesce in the court decree-- a decision made by the very board affected by the decree. The decision was made by a board of elected representatives of the residents of the school district, including these appellants. It was made following public hearings at which appellants had full opportunity to influence the board's decision. That decision was within the competence of the board in balancing many competing factors against the relatively modest degree of restraint imposed by the decree.
 
 
 12
 Pursuant to court decree the board has now adopted a plan for integration of the schools which has been submitted to the court and received court approval. Before us the board opposes appellants in their effort to intervene. It wishes to be free forthwith to put its plan into operation and argues persuasively that intervention and a prolongation of this suit will cause confusion and turmoil within the school district and be disruptive of their plan.
 
 
 13
 It is clear that the protectable interest of appellants in the freedom of their school board from excessive judicial interference is substantially less apparent here than it was in Smuck. Such restraints as were imposed have in substance been found acceptable by the board and thus create no present prejudice.
 
 
 14
 Changed circumstances, future developments in the law or experience indicating unworkability will permit this or future boards to seek relief from some specific restraint or aspect of the plan approved for 1970-71. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); System Federation, etc. v. Wright, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); Lapin v. Shulton, Inc., 333 F.2d 169 (9th Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964). Such action may well lead to review and modification of the order under the continuing jurisdiction of the District Court.
 
 
 15
 Smuck v. Hobson, supra, is not, of course, the only recent case construing Rule 24(a)(2). We have concluded, however, that none of the others control in the peculiar factual and legal context presented here.[3] We hold that under these circumstances the Pasadena School Board, in making its decision not to appeal, was adequately acting in protection of the limited interest of these appellants. The District Court correctly interpreted Rule 24(a)(2); its ruling will not be disturbed.
 
 
 16
 The order denying appellants' intervention is affirmed.
 
 
 
 [1]
 The plan was to include, inter alia, procedures for the assignment, hiring and promotion of teachers and staff members and for location and construction of new school facilities such as to correct the racial imbalance in the Pasadena school systems. It was to provide for pupil assignment in such a way as to assure by September, 1970, that 'there shall be no school in the District, elementary or junior high or senior high school, with a majority of any minority students.'
 
 
 [2]
 'Rule 24. Intervention
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'
 
 
 [3]
 In the most important of these, Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), the Supreme Court permitted a group of potential customers to intervene in protracted antitrust litigation involving the United States (as appellee) as well as several utilities. Divestiture had earlier been ordered, United States v. El Paso Natural Gas Co., 376 U.S. 651, 662, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), but the Attorney General settled instead. It was clear from the Court's consideration of the case on the merits that it felt the Attorney General had attempted to circumscribe the execution of the Court's mandate. Id. at 136, 87 S.Ct. 932
 Arguably, a strict application of this liberal reading of Rule 24(a)(2) would support appellants' motion for intervention. But, in Lupton Mfg. Co. v. United States, 388 U.S. 457, 87 S.Ct. 2112, 18 L.Ed.2d 1318 (1967), decided a few months after Cascade, the Supreme Court indicated that Cascade was not to be read so broadly. In Lupton the Court dismissed per curiam an appeal from a denial of intervention in a case involving an antitrust consent decree. Other courts have refused to treat Cascade as 'carte blanche' for intervention, Hobson v. Hansen, 44 F.R.D. 18, 25 (D.D.C.1968), or accept it as applying except to an extraordinary fact situation, Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175, 179 n. 16 (1968). Many commentators agree; e.g., Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure, 81 Harv.L.Rev. 356, 406 (1967); Note, 81 Harv.L.Rev. 221 (1967). Consequently, we feel that Cascade is not to be read as permitting intervention of right to any person conceivably affected adversely by pending litigation, and do not view it as controlling here.